**THE ATKIN FIRM, LLC**
Formed in the State of New Jersey
By: John C. Atkin, Esq.
55 Madison Avenue, Suite 400
Morristown, NJ 07960
Tel.: (973) 314-8010 / Fax: (833) 693-1201
JAtkin@atkinfirm.com
*Attorneys for Plaintiff Strike 3 Holdings, LLC*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| STRIKE 3 HOLDINGS, LLC,<br><br>        Plaintiff,<br><br>   v.<br><br>JOHN DOE subscriber assigned IP address 100.1.15.186,<br><br>        Defendant. | Civil Case No. 2:20-cv-10180-CCC-ESK<br><br>**MOTION RETURN DATE:**<br>September 21, 2020<br><br>***Document Filed Electronically*** |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO SERVE A THIRD-PARTY SUBPOENA PRIOR TO THE RULE 26(f) CONFERENCE SUBJECT TO A PROTECTIVE ORDER

Of Counsel and on the brief:
    John C. Atkin, Esq.

## <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION ........................................................ 1

II.   BRIEF FACTUAL BACKGROUND ........................................... 2

  A. Plaintiff is a Victim of Rampant Copyright Infringement Perpetrated Through BitTorrent ........................................................ 2

  B. Plaintiff Brings Its Litigation in Good Faith ................................. 5

  C. At this Stage of the Litigation, there is a Reasonable Inference that Doe is the Infringer. ........................................................ 6

  D. A Court Order is Required to Advance this Litigation. ....................... 7

III. LEGAL ARGUMENT ........................................................10

  A. Legal Standard Governing Expedited Discovery Requests To Identify An Anonymous Defendant ................................................10

  B. There Is Good Cause for this Court to Grant Plaintiff's Motion for Expedited Discovery ........................................................13

    1.   Plaintiff's Complaint States A *Prima Facie* Claim for Direct Copyright Infringement. ........................................................13

    2.   The Timing of the Request in Light of the Formal Start to Discovery Favors Granting Relief. ............................................21

    3.   Plaintiff's Request is Narrowly Tailored and Identifies the Limited and Specific Information Sought. ........................................21

    4.   The Purpose of the Requested Discovery and the Need for the Information Sought in Order to Advance the Claim Favors Granting Relief. ........................................................22

    5.   The Discovery Does Not Burden Doe or Require Doe to Respond in an Expedited Manner. ...............................................24

    6.   There Are No "Alternative Means" to Uncover Doe's True Identity......24

    7.   Doe's Minimal Privacy Interest Is Substantially Outweighed by Plaintiff's Interest in Protecting Its Copyrights. .....................27

  C. The Court Should Enter an Appropriate Protective Order to Balance the Interests of the Public's Right to Access Court Proceedings and Doe's Privacy Interests........................................................28

CONCLUSION ........................................................32

# TABLE OF AUTHORITIES

**Cases**

*A&M Records, Inc. v. Napster, Inc*.,
  239 F.3d 1004 (9th Cir. 2001)...........................................................................15

*Alston v. Parker*,
  363 F.3d 229 (3d Cir. 2004)..............................................................10, 21, 22

*Arista Records, LLC v. Doe 3*,
  604 F.3d 110 (2d Cir. 2010)...............................................................................21

*Athill v. Speziale*,
  No. 06-4941, 2009 WL 1874194 (D.N.J. June 30, 2009) ..................................10

*Blakeslee v. Clinton Cty.*,
  336 Fed. Appx. 248 (3d Cir. 2009) .................................................................15

*BMG Rights Mgmt. (US) LLC v. Cox Commc'n., Inc.*,
  881 F.3d 293 (4th Cir. 2018)........................................................................4, 25

*Call of the Wild Movie, LLC v. Does 1-1,062*,
  770 F. Supp. 2d 332 (D.D.C. 2011) ..................................................................25

*Cobbler Nevada LLC v. Gonzalez*,
  901 F.3d 1142 (9th Cir. 2018)......................................................................8, 18

*Connelly v. Lane Const. Corp.*,
  809 F.3d 780 (3d Cir. 2016)...............................................................................14

*CSC Holdings, Inc. v. Redisi*,
  309 F.3d 988 (7th Cir. 2002)..............................................................................27

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
  499 U.S. 340 (1991).............................................................................................14

*Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*,
  __ U.S. __, 139 S. Ct. 881 (2019) .....................................................................15

*Freeplay Music, LLC v. Dave Arbogast Buick-GMC, Inc.*,
  No. 17-42, 2019 WL 4647305 (S.D. Ohio Sept. 24, 2019)................................. 8

*In re Does*,
  337 S.W.3d 862 (Tex. 2011) ............................................................................... 9

*In re Fine Paper Antitrust Litig.*,
  685 F.2d 810 (3d Cir. 1982)...............................................................................11

*John Wiley & Sons, Inc. v. Doe Nos. 1-30*,
  284 F.R.D. 185 (S.D.N.Y. 2012)..................................................................21, 25

*Joseph v. Hess Oil Virgin Islands Corp.*,
  651 F.3d 348 (3d Cir. 2011)................................................................................12

*Kansas v. Glover*,
  __ U.S. __, 140 S. Ct. 1183 (2020) .............................................................7, 17

*Malibu Media v. Rahuse*,
    No. 14-6976, 2015 WL 2231853 (D.N.J. May 11, 2015) ...................................18

*Malibu Media, LLC v. Doe*,
    No. 12-07789, 2014 WL 229295 (D.N.J. Jan. 21, 2014) ....................................24

*Malibu Media, LLC v. Doe*,
    No. 13-3648, 2014 WL 2581168 (N.D. Ill. June 9, 2014) ................................. 8

*Malibu Media, LLC v. Doe*,
    No. 13-365, 2014 WL 7188822 (D. Md. Dec. 16, 2014) ................................... 8

*Malibu Media, LLC v. Doe*,
    No. 18-5792, 2019 WL 7876473 (N.D. Ill. Jan. 2, 2019) ..................................18

*Malibu Media, LLC v. Doe*,
    No. 19-2347, 2019 WL 4305486 (D.D.C. Sept. 11, 2019) ................................20

*Malibu Media, LLC v. John Does # 1-30*,
    2012 WL 6203697 (D.N.J. Dec. 12, 2012)........................................................29

*Malibu Media, LLC v. Park*,
    No. 17-12107, 2019 WL 2960146 (D.N.J. July 9, 2019).................................20

*Malibu Media, LLC v. Peled*,
    No. 18-141, 2020 WL 831072 (D.N.J. Feb. 20, 2020) .....................................20

*Patrick Collins, Inc. v. Does 1-39*,
    No. 12-00096, 2012 WL 1432224 (D. Md. Apr. 24, 2012) ............................... 2

*Patrick Collins, Inc. v. John Does 1-9*,
    No. 12-3161, 2012 WL 4321718 (C.D. Ill. Sept. 18, 2012)............................... 8

*Patrick Collins, Inc. v. Osburn*,
    No. 12-1294, 2014 WL 1682010 (D. Md. Apr. 28, 2014) .................................17

*Poplar Oaks, Inc. v. Doe*,
    No. 15-130-FTM-29, 2015 WL 1523987 (M.D. Fla. Apr. 2, 2015).................... 2

*Raw Films, Ltd. v. John Does 1-15*,
    No. 11-7248, 2012 WL 1019067 (E.D. Pa. Mar. 26, 2012)...............................22

*Royal Indem. Co. v. Petrozzino*,
    598 F.2d 816 (3d Cir. 1979)..............................................................................15

*See ME2 Prods., Inc. v. Kariuki*,
    No. 17-1077, 2018 WL 2088306 (W.D. Wash. May 4, 2018)...........................16

*Singletary v. Penn. Dep't of Corr.*,
    266 F.3d 186 (3d Cir. 2001)..............................................................................15

*Sony Music Entm't Inc. v. Does 1-40*,
    326 F. Supp. 2d 556 (S.D.N.Y. 2004) ..............................................................23

*Strike 3 Holdings, LLC v. Doe*,
    330 F.R.D. 552 (D. Minn. 2019)........................................................................27

*Strike 3 Holdings, LLC v. Doe*,
    964 F.3d 1203 (D.C. Cir. 2020) ..............................................................*passim*

*Strike 3 Holdings, LLC v. Doe*,
   No. 18-12585, 2020 WL 3567282 (D.N.J. June 30, 2020) ........................*passim*
*Strike 3 Holdings, LLC v. Doe*,
   No. 18-12609, ECF No. 16 (D.N.J. June 27, 2019)............................................28
*Strike 3 Holdings, LLC v. Doe*,
   No. 18-2637, 2019 WL 935390 (E.D. Cal. Feb. 26, 2019).................................19
*Strike 3 Holdings, LLC v. Doe*,
   No. 18-569, 2018 WL 4109394 (W.D.N.Y. Aug. 28, 2018)..............................25
*Strike 3 Holdings, LLC v. Doe*,
   No. 19-02552, 2019 WL 4855039 (S.D.N.Y. Oct. 2, 2019) ............................... 7
*Strike 3 Holdings, LLC v. Doe*,
   No. 19-08231, 2020 WL 1942471 (N.D. Cal. Apr. 22, 2020) ...........................26
*Strike 3 Holdings, LLC v. Doe*,
   No. 19-08239, 2020 WL 1865379 (N.D. Cal. Apr. 13, 2020) ...........................26
*Strike 3 Holdings, LLC v. Doe*,
   No. 19-10674, 2020 WL 2574940 (C.D. Cal. Apr. 28, 2020)............................26
*Strike 3 Holdings, LLC v. Doe*,
   No. 19-10677, 2020 WL 2616243 (C.D. Cal. Apr. 23, 2020)............................26
*Strike 3 Holdings, LLC v. Doe*,
   No. 19-16182, 2019 WL 3985628 (D.N.J. Aug. 23, 2019)................................13
*Strike 3 Holdings, LLC v. Doe*,
   No. 19-167, 2019 WL 1865919 (N.D. Cal. Apr. 25, 2019) ............................... 7
*Strike 3 Holdings, LLC v. Doe*,
   No. 19-22743, ECF No. 13 (S.D. Fla. Sept. 20, 2019) ....................................... 7
*Strike 3 Holdings, LLC v. Doe*,
   No. 19-2552, 2019 WL 4855039 (S.D.N.Y. Oct. 2, 2019) ..........................18, 23
*Strike 3 Holdings, LLC v. Doe*,
   No. 20-67, 2020 WL 3640008 (S.D. Cal. July 6, 2020) ...................................26
*Toys "R" Us, Inc. v. Step Two, S.A.*,
   318 F.3d 446 (3d Cir. 2003)..............................................................................10
*U.S. v. Christie*,
   624 F.3d 558 (3d Cir. 2010)..............................................................................28
*U.S. v. Taylor*,
   487 U.S. 326 (1988)...........................................................................................12
*W. Coast Prods., Inc. v. Does 1-1,434*,
   2012 WL 10132002 (D.D.C. Aug. 6, 2012) ......................................................23

**Statutes**
17 U.S.C. § 106 .....................................................................................................15
17 U.S.C. § 410 .....................................................................................................15

17 U.S.C. § 503 ............................................................................................ 5
17 U.S.C. § 504 ............................................................................................ 5
17 U.S.C. § 505 ............................................................................................ 5
47 U.S.C. § 522 ...........................................................................................25
47 U.S.C. § 551 ...........................................................................................27

**Other Authorities**

David Blackburn, Jeffrey A Eisenach & David Harrison, *Impacts of Digital Video
   Piracy on the U.S. Economy* (June 2019), *available at*
   https://www.theglobalipcenter.com/wp-content/uploads/2019/06/Digital-Video-
   Piracy.pdf ....................................................................................................... 4

**Rules**

Fed. R. Civ. P. 26............................................................................................1, 11

## I.   INTRODUCTION

Plaintiff Strike 3 Holdings, LLC ("Strike 3" or "Plaintiff"), by and through its counsel, The Atkin Firm, LLC, submits this memorandum of law in support of Plaintiff's motion for leave to serve a third-party subpoena prior to the Rule 26(f) conference subject to a protective order, pursuant to Federal Rule of Civil Procedure 26(d)(1).

Plaintiff is the owner of original, award winning motion pictures featured on its brand's subscription-based adult websites.  Unfortunately, Plaintiff's success has led users on the Internet to illegally infringe its works on a very large scale.  To combat this mass infringement, Plaintiff has developed proprietary software, which has detected the infringement of Plaintiff's content at issue in this matter, specifically, that Defendant John Doe subscriber assigned IP address 100.1.15.186's ("Doe") was illegally distributing several of Plaintiff's motion pictures over a substantial period of time.

BitTorrent use is anonymous (revealing only the infringer's IP address), and Congress has prohibited Internet Service Providers ("ISPs") from disclosing an IP address subscriber's information absent a court order.  *See Cable Communications Policy Act of 1984* ("CCPA"), 47 U.S.C. § 551 *et seq.*  Accordingly, Plaintiff now

seeks leave to serve limited, immediate[1] discovery on Doe's ISP, Verizon Fios ("Verizon Fios"), in the form of a Rule 45 subpoena seeking only the name and address of the subscriber assigned this IP address at the exact date and time of one (1) instance of recorded infringement, subject to the terms of a protective order.

This information is necessary, relevant, and proportional to the needs of this case, enabling Plaintiff to learn Doe's identity, investigate Doe's role in the infringement (including whether other individuals exist with sufficient access to the IP address during the period of infringement and, thus, might plausibly be the "true" infringer), and—if an adequate, good faith basis exists to further identify Doe (or someone else) as the infringer, beyond their mere association with the IP address—to amend its complaint accordingly and effectuate service of process. Plaintiff will only use this information to prosecute the claims made in its Complaint and any amended pleading in this matter.  Without this information, Plaintiff cannot pursue this lawsuit to protect its copyrights.

## II.   BRIEF FACTUAL BACKGROUND

### A.   Plaintiff is a Victim of Rampant Copyright Infringement Perpetrated Through BitTorrent

Plaintiff holds title to the intellectual property associated with the *Blacked*, *Blacked Raw*, *Tushy*, and *Vixen* adult brands (the "Brands"), including the

---

[1] *See Poplar Oaks, Inc. v. Doe*, No. 15-130-FTM-29, 2015 WL 1523987, at *2 (M.D. Fla. Apr. 2, 2015); *Patrick Collins, Inc. v. Does 1-39*, No. 12-00096, 2012 WL 1432224, at *1 (D. Md. Apr. 24, 2012).

copyrights to each of the motion pictures distributed through the Brands' sites and the trademarks to each of the Brand's names and logos. *See* Declaration of David Williamson, ¶ 13, attached hereto as Exhibit A [hereinafter "Williamson Decl."]. Although it started out small, the Brands' websites now host approximately 15 million visitors each month. *Id.* at ¶ 14. This success is no fluke. Plaintiff's philosophy has always been to pay artists and models an amount above that being paid by other companies, focusing on delivering superior quality films. *Id.* at ¶¶ 15–17. Indeed, Plaintiff's motion pictures are known for having some of the highest production budgets of any in the adult industry. *Id.* at ¶ 19.

Because of this commitment to quality, the websites for the Brands have a subscriber base that is one of the highest of any adult site in the world. *Id.* at ¶ 20. Plaintiff is also currently the number one seller of adult DVDs in the United States. *Id.* at ¶ 21. Finally, Plaintiff's content is licensed throughout the world, including by most major cable networks. *Id.* at ¶ 22. This success has led to numerous awards, such as "adult site of the year," "best marketing campaign – company image," and "best cinematography." *Id.* at ¶ 23.

Unfortunately, this success also brings piracy, which causes tremendous damage.[2] While Plaintiff can compete in the industry, it cannot compete when its

---

[2] The Global Innovation Policy Center, under the sponsorship of the U.S. Chamber of Commerce, released a report in June 2019 finding that digital video piracy

content is stolen.  Williamson Decl. at ¶ 26.  To continue providing value for its

subscribers, exciting and inspiring projects for performers, and top-paying jobs and

growth in the adult entertainment community, Plaintiff must protect its copyrights.

*Id.* at ¶¶ 18, 39.

Although Plaintiff has attempted to curb this mass infringement by sending

thousands of "take-down" notices under the Digital Millennium Copyright Act

("DMCA"),[3] individual suits like this one against extreme infringers are also

necessary to (1) generally deter mass piracy of its motion pictures and redirect

---

conservatively causes lost domestic revenues of at least $29.2 billion and as much
as $71.0 billion.  It also found that it results in losses to the U.S. economy of
between 230,000 and 560,000 jobs and between $47.5 billion and $115.3 billion in
reduced gross domestic product (GDP) each year.  David Blackburn, Jeffrey A
Eisenach & David Harrison, *Impacts of Digital Video Piracy on the U.S. Economy*
(June   2019),   *available   at*   https://www.theglobalipcenter.com/wp-
content/uploads/2019/06/Digital-Video-Piracy.pdf.

[3] DMCA notices of infringement, which are sent to ISPs in the (usually futile) hope
that they will be forwarded to the infringers themselves, *cf. BMG Rights Mgmt.
(US) LLC v. Cox Commc'n., Inc.*, 881 F.3d 293, 300, 304 (4th Cir. 2018), are
different from the thousands of DMCA take-down notices that Plaintiff sends to
websites that are hosting infringing content, enabling infringement by individuals.
*See* Williamson Decl., at ¶ 31.  Although Plaintiff formerly sent DMCA notices of
infringement to ISPs with the hope that they would be forwarded to individual
infringers—to remind them that stealing is wrong—there is no "exhaustion
requirement" that rightsholders first send such notices prior to filing suit against
individual infringers to protect their copyrights.  *See* S. Rep. No. 105-190 at 45
("[C]opyright owners are not obligated to give notification of claimed infringement
in order to enforce their rights.");  *Strike 3 Holdings, LLC v. Doe*, No. 18-12585,
2020 WL 3567282, at *9 (D.N.J. June 30, 2020) (holding that utilization of DMCA
notice procedure is "not relevant" to Plaintiff's motion for expedited discovery).

infringers into the readily accessible and legal market for its works, and (2) specifically deter (and enjoin) Doe from continuing to infringe on Plaintiff's works, to destroy the infringing copies of the works that Doe has and is distributing using BitTorrent, and to obtain compensation for the infringement that has occurred. *See* 17 U.S.C. §§ 503(b); 504(a), (c); 505. These remedies are available solely thought the Copyright Act, and not the DMCA.

### B.   Plaintiff Brings Its Litigation in Good Faith

Plaintiff is mindful of the nature of this litigation and its goal is not to publicly disclose the choices that people make regarding the content they wish to enjoy. Moreover, Plaintiff does not seek to force anyone to settle unwillingly, especially anyone that is innocent. Williamson Decl. at ¶ 33. Plaintiff only files suit against extreme infringers, and only proceeds with amended complaints based on strong evidence. *Id.* at ¶ 34. Indeed, each lawsuit is brought against infringers that not only engage in illegal downloading, but who are also large-scale unauthorized distributors of Plaintiff's content. *Id.* Plaintiff does not seek settlements unless initiated by a defendant or a defendant's counsel. *Id.* at ¶ 35. Plaintiff does not send demand letters. *Id.* Finally, Plaintiff does not believe anyone should be embarrassed about enjoying Plaintiff's works (they just need to pay for that right, not steal it), and Plaintiff respects the desire of defendants to keep private their choices regarding the content they choose to enjoy.

Accordingly, Plaintiff has a policy to: (1) enter into confidentiality agreements with defendants to facilitate resolution of cases, when requested; and (2) stipulate to requests by defendants for the entry of orders to maintain the confidentiality of their identity.  Plaintiff's proposed order in this matter contains several protective provisions.  In sum, Plaintiff is careful to only proceed to litigation with strong cases, when it has a good faith basis for doing so, to enforce its rights in a way that is mindful of the defendant's privacy interests.  Plaintiff's goals are to deter piracy, seek redress for its harmful consequences, and redirect those who infringe content to the avenue of legitimately acquiring access to Plaintiff's works.

### C.   At this Stage of the Litigation, there is a Reasonable Inference that Doe is the Infringer.

Plaintiff, using its proprietary forensic software, VXN Scan ("VXN"), monitored and detected the infringement of Plaintiff's content at issue in this matter.  *See* Williamson Decl. at ¶¶ 40–80; Declaration of Patrick Paige, attached hereto as Exhibit B [hereinafter "Paige Decl."], at ¶¶ 13–28.  VXN discovered that Doe's IP address was illegally distributing several of Plaintiff's motion pictures over a substantial time period.  *See* ECF Nos. 1, 1-1.  This IP address was assigned to Doe by his or her ISP, which is the only entity with the information necessary to identify Doe, by correlating the IP address with Doe's identity at a specific time when infringement was recorded.  Paige Decl. at ¶ 28. Although it is theoretically possible that other individuals exist who also had sufficient access to Doe's IP

address during the substantial period of alleged infringement, and, therefore, *could* be the infringer, *see infra* Sec. III.B.1, the existence of these additional individuals is purely speculative, and, more importantly, irrelevant at this juncture.[4]   At this stage, the only person that can be shown to definitively (1) exist and (2) have sufficient access to the IP address during the period of infringement is the subscriber:  Doe.  *See Kansas v. Glover*, __ U.S. __, 140 S. Ct. 1183, 1186–91 (2020) (recognizing reasonable inference that owner is also driver of vehicle in absence of negating information).  Thus, as discussed in more detail below, at this stage there is a reasonable and plausible inference that Doe is the infringer.

### D.   A Court Order is Required to Advance this Litigation.

Although these suits "fit[] squarely within the tradition of copyright enforcement," *Glacier Films (USA), Inc. v. Turchin*, 896 F.3d 1033, 1041 (9th Cir. 2018), the anonymity afforded by the BitTorrent protocol, along with the CCPA's qualified privacy interest for subscriber data, presents a unique technological obstacle that adds a level of complexity to these cases.  The only lawful way Plaintiff (and other copyright holders) have of directly combating this mass infringement is to discover the name of the person assigned the IP address being

---

[4] *See Strike 3 Holdings, LLC v. Doe*, No. 19-02552, 2019 WL 4855039, at *2 (S.D.N.Y. Oct. 2, 2019); *Strike 3 Holdings, LLC v. Doe*, No. 19-22743, ECF No. 13 at 6-8 (S.D. Fla. Sept. 20, 2019); *Strike 3 Holdings, LLC v. Doe*, No. 19-167, 2019 WL 1865919, at *2 (N.D. Cal. Apr. 25, 2019).

used to commit the infringement, *id.* at 1036, and then determine whether it can further identify that person (or someone else) as the infringer. *Cobbler Nevada LLC v. Gonzalez*, 901 F.3d 1142, 1147 (9th Cir. 2018). And Plaintiff can only do that by obtaining court authorization to serve a subpoena on the ISP to identify the subscriber, 47 U.S.C. § 551, *et seq.*, which first requires that suit be filed naming the subscriber as the placeholder defendant. *See Malibu Media, LLC v. Doe*, No. 13-365, 2014 WL 7188822, *6–9 (D. Md. Dec. 16, 2014) (Grimm, J.). As a result, courts across the country have adopted "sensible" and "practical" procedures to permit limited "early discovery" of a subscriber's identity so that these suits may either advance or be promptly dismissed. *Glacier*, 896 F.3d at 1036, 1038, 1040.

Historically, Plaintiff has sought the Order requested in this motion exclusively by filing John Doe complaints against subscribers in federal court and seeking leave to conduct limited early discovery to learn their identity. And it is no secret that Strike 3—whose works are incredibly popular, both to legitimately purchase and to steal—has filed many such suits in the past. While the nature of combating mass infringement naturally leads to a large number of suits,[5] some federal courts have nevertheless expressed concern with the volume of this

---

[5] *See Freeplay Music, LLC v. Dave Arbogast Buick-GMC, Inc.*, No. 17-42, 2019 WL 4647305, at *14 (S.D. Ohio Sept. 24, 2019); *Malibu Media, LLC v. Doe*, No. 13-3648, 2014 WL 2581168, *2 (N.D. Ill. June 9, 2014); *Patrick Collins, Inc. v. John Does 1-9*, No. 12-3161, 2012 WL 4321718, at *5 (C.D. Ill. Sept. 18, 2012).

litigation.  And the volume has only increased as Strike 3's library has grown in size and popularity, leading to even more infringement.

To address the concern that these suits—which are sometimes dismissed without prejudice after early discovery reveals that, for a variety of reasons,[6] the infringement claim should not be pursued further—were burdening the federal judiciary, Plaintiff began filing a number of pure bill of discovery actions in Florida alongside its federal suits.  The bill of discovery is an equitable cause of action that permits discovery independent of the prospective claim for relief, enabling Plaintiff to determine whether it can identify the infringer (beyond merely being the subscriber), while simultaneously affording the court oversight required by the CCPA.[7]  Nevertheless, Plaintiff has a policy that, if a subscriber or ISP objects to a Florida subpoena, Plaintiff will withdraw that subpoena and begin the early discovery process anew by filing suit in the federal court with jurisdiction over the objector.  In full candor to the Court, Plaintiff notes that it did not first seek authorization for this subpoena in Florida because Doe's ISP has a policy of not complying with any subpoena that has not been authorized by a federal court.

---

[6] For example, Strike 3 has a policy of dismissing claims without prejudice where it learns the likely infringer is in active military service, can demonstrate severe financial hardship, or is a minor.

[7] Importantly, the CCPA imposes no requirement that the order authorizing release of a subscriber's identity be entered only by a *federal* court.  *See, e.g., In re Does*, 337 S.W.3d 862, 864 (Tex. 2011).

## III.   LEGAL ARGUMENT

### A.   Legal Standard Governing Expedited Discovery Requests To Identify An Anonymous Defendant

Cases such as this are the paradigm for when leave to conduct pre-Rule 26(f) conference discovery should be allowed.   "In cases involving as-yet-unknown defendants, in which the plaintiff cannot serve its complaint—much less confer with the defendant—without obtaining identifying information from a third party, 'the *only* potential avenue for discovery is a court order under Rule 26(d)(1).'" *Strike 3 Holdings, LLC v. Doe*, 964 F.3d 1203 (D.C. Cir. 2020) (internal brackets and citations omitted) (emphasis added).

The Third Circuit has instructed that where discovery is sought that "would aid in the identification of responsible defendants or the lack thereof, district courts *should strongly consider granting it*." *Alston v. Parker*, 363 F.3d 229, 233 n.6 (3d Cir. 2004) (emphasis added); *Athill v. Speziale*, No. 06-4941, 2009 WL 1874194, at *14 (D.N.J. June 30, 2009) ("Plaintiffs should thus be allowed every opportunity to identify the unknown defendants."); *see also Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) ("[C]ourts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is 'clearly frivolous.'").   And, "[i]n conducting any discovery inquiry, the Third Circuit has suggested that district courts risk reversal if their rulings will make it impossible

10

for any party to 'obtain crucial evidence[.]'" *Strike 3*, 2020 WL 3567282 at *5 (quoting *In re Fine Paper Antitrust Litig.*, 685 F.2d 810, 818 (3d Cir. 1982)).

"Rule 26(d)(1) generally prohibits parties from seeking discovery 'from any source before the parties have conferred as required by Rule 26(f).'" *Id.* at *4 (quoting Fed. R. Civ. P. 26(d)(1)). "Notwithstanding, district courts possess broad discretion in managing the discovery process and may expedite or otherwise alter its timing or sequence." *Id.* (citations omitted). Although "Rule 26(d) does not set a standard for determining when expedited discovery should be permitted," courts in the District of New Jersey routinely apply the "good cause" standard to make that determination.[8] *Id.*

_____

[8] The United States Court of Appeals for the District of Columbia Circuit reversed a decision that denied Plaintiff leave to conduct similar expedited discovery as an abuse of discretion—for several reasons—and in so doing noted that the "good cause" requirement in Rule 26(b) was eliminated by amendment in 2015, which replaced it "with the overarching relevance and proportionality standard[.]" *Strike 3*, 964 F.3d at 1207 n.2, *rev'g and remanding*, 351 F. Supp. 3d 160 (D.D.C. 2018). The D.C. Circuit nevertheless concluded that the district court's decision "was an abuse of discretion under any applicable standard," and, therefore, did not reach whether the "good cause" standard "continues to apply under the current version of Rule 26." *Id.* Importantly, there is no conflict between the D.C. Circuit's decision and Judge Hillman's decision in *Strike 3*, which similarly reversed a decision denying Plaintiff leave to conduct expedited discovery, because the Court agreed with the conclusion that the subscriber's identity is "relevant" within the meaning of Fed. R. Civ. P. 26(b), 2020 WL 3567282 at *7 n.4, and merely looked to the "good cause" factors to determine whether there was any reason to deny Plaintiff discovery of that relevant information in an expedited fashion, and found there was none. *Id.* at *8.

"Under the good cause test, whether to permit expedited discovery is decided by considering the totality of the circumstances and the balancing of the interests of the plaintiff and defendant." *Id.* at *4 (citation omitted). "'Good cause' is understood to mean '[a] legally sufficient reason,' and it reflects 'the burden placed on a litigant (usu. by court rule or order) to show why a request should be granted or an action excused.'" *Joseph v. Hess Oil Virgin Islands Corp.*, 651 F.3d 348, 351 (3d Cir. 2011) (citation omitted).

In a well-reasoned and definitive decision, Judge Hillman identified a "non-exclusive list of factors courts typically examine in conducting the good cause analysis" in this context, and found that Plaintiff satisfied each factor and was therefore entitled to early discovery.[9]  *See Strike 3*, 2020 WL 3567282 at *4. Those factors are:

(1) the plaintiff's ability to make out a *prima facie* showing of infringement;

(2) the timing of the request in light of the formal start to discovery;

(3) whether the request is narrowly tailored and the specificity of the discovery request;

(4) the purpose of the requested discovery and the need for the information sought in order to advance the claim;

---

[9] Importantly, while "district courts have broad discretion over the structure, timing, and scope of discovery," that "discretion is not unbounded." *Strike 3*, 964 F.3d at 1205, 1208.  "[D]iscretionary choices are not left to a court's inclination, but to its judgment; and its judgment [must] be guided by sound legal principles." *Id.* at 1208 (quoting *U.S. v. Taylor*, 487 U.S. 326, 336 (1988)).

(5) whether the discovery burdens the defendant and whether the defendant can respond to the request in an expedited manner;

(6) the absence of alternative means for obtaining the information sought in the subpoena; and

(7) the defendant's expectation of privacy.

In sum, "[g]ood cause exists where 'the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party.'" *Strike 3 Holdings, LLC v. Doe*, No. 19-16182, 2019 WL 3985628, at *1 (D.N.J. Aug. 23, 2019) (citation omitted).

## B.   There Is Good Cause for this Court to Grant Plaintiff's Motion for Expedited Discovery.

Although "[c]ommon sense dictates" that early discovery of the relevant, proportional, and "crucial" evidence sought by Plaintiff is required so that this case can either proceed or be voluntarily dismissed, the Court must nevertheless determine whether "good cause" exists to provide this discovery in an expedited fashion. *Strike 3*, 2020 WL 3567282 at *8.  As discussed in more detail below, these factors all support permitting limited expedited discovery in this matter.

### 1.   Plaintiff's Complaint States A *Prima Facie* Claim for Direct Copyright Infringement.

To state a *prima facie* claim for copyright infringement of Plaintiff's motion pictures at issue in this litigation (hereinafter the "Works"), *see* ECF No. 1-1, Plaintiff must allege (1) ownership of a valid copyright, and (2) copying of

constituent elements of the work that are original.  *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *In re McGraw-Hill Ed. Holdings, LLC*, 909 F.3d 48, 66–67 (3d Cir. 2018).  Plaintiff's Complaint accomplishes this, alleging: (1) "Plaintiff is the owner of the Works, which [are] an original work of authorship"; (2) "Plaintiff owns the copyrights to the Works and the Works have been registered with the United States Copyright Office"; (3) "[d]efendant copied and distributed the constituent elements of Plaintiff's Works using the BitTorrent protocol"; and (4) "[a]t no point in time did Plaintiff authorize, permit, or consent to Defendant's distribution of its Works, expressly or otherwise."  *See* ECF No. 1 at ¶¶ 45, 48-50.

These allegations "quite clearly" and "unmistakably" allege the necessary elements of copyright infringement against Doe.  *Strike 3*, 2020 WL 3567282 at *5–6.  And these allegations are not "conclusory."  Rather, Plaintiff specifically alleges all the necessary "historical fact[s]," *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016), of its claim:  the "who" (the subscriber), the "what" (copyright infringement of specific works produced by Plaintiff), the "where" (established by geo-location technology), the "when" (recorded down to the minute and second), and the "how" (through the BitTorrent protocol).  ECF Nos. 1, 1-1.  That Plaintiff cannot—without early discovery—identify Doe by name is irrelevant:  "When a plaintiff is aware of an actionable claim but does not know the

identity of a defendant, an action may be commenced against John Doe." *Royal Indem. Co. v. Petrozzino*, 598 F.2d 816, 818 (3d Cir. 1979); *see also Blakeslee v. Clinton Cnty.*, 336 Fed. Appx. 248, 250 (3d Cir. 2009); *Singletary v. Penn. Dep't of Corr.*, 266 F.3d 186, 201 n.5 (3d Cir. 2001).

Plaintiff owns a valid copyright in each of the Works. *See* 17 U.S.C. § 410(c); *see also* ECF No. 1 at ¶¶ 45, 48. All of Plaintiff's copyrights were registered with the Copyright Office at the time suit was filed. *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, __ U.S. __, 139 S. Ct. 881, 886–87 (2019); *see* ECF No. 1-1. Moreover, Plaintiff's *prima facie* allegations of infringement are attested to by Plaintiff's investigator, Patrick Paige. *See* Paige Decl., Ex. B. And each digital file has been verified to be a copy of one of Plaintiff's copyrighted Works. *See* Declaration of Susan B. Stalzer, Exhibit C.

Plaintiff has also made a plausible *prima facie* showing of "copying" by Doe. "'The word 'copying' is shorthand for the infringing of any of the copyright owner's five exclusive rights' described in § 106." *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001). Plaintiff's Complaint alleges that Doe not only downloaded Plaintiff's Works over the BitTorrent network, *see* 17 U.S.C. § 106(1), but also distributed these files to other users in the BitTorrent swarm. *See id.* § 106(3); *see also* ECF No. 1 at ¶¶ 4, 28–44, 49.

Plaintiff candidly acknowledges that it is theoretically possible that other individuals might (1) exist and (2) have sufficient access to the IP address during the infringement, that is, it is *possible* Doe *might* not be the infringer.  *See ME2 Prods., Inc. v. Kariuki,* No. 17-1077, 2018 WL 2088306, at *2 (W.D. Wash. May 4, 2018) ("Plaintiff may be wrong—but it is not required to prove its allegations in order to adequately plead a claim of infringement under *Twombly.*").  However, at this juncture, Plaintiff's initial complaint—filed *before* early discovery has occurred—clearly states a claim of infringement against the anonymous placeholder defendant:

> It is plausible [to allege] that files downloaded using a particular IP address were downloaded by the subscriber of that address.  The *possibility* that a family member, guest, or neighbor may have downloaded the Works *does not render Plaintiff's claims implausible*.

*Malibu Media, LLC v. Doe,* No. 16-1739, 2017 WL 1050573, at *2 (D.N.J. Mar. 20, 2017) (Martini, J.) (denying motion to dismiss) (citation omitted) (emphasis added); *see also Strike 3*, 964 F.3d at 1211 (noting that it is "undoubtedly true that individuals other than the IP address subscriber may have been responsible for the infringement at issue," but rejecting argument that "this alternative explanation [is] so obvious as to render Strike 3's claim against the subscriber facially implausible"); *Strike 3*, 2020 WL 3567282 at *5–7 (reversing determination that Plaintiff's complaint failed to state a plausible claim); *Strike 3 Holdings, LLC v. Doe*, No. 18-16593, 2019 WL 4745360, at *6 (D.N.J. Sept. 30, 2019) (holding that

16

"[i]f any defendant could quash a subpoena based on the mere possibility that someone else has used the defendant subscriber's IP address to perpetuate the alleged infringement then a plaintiff would be unable to enforce its rights.") (citation and internal quotation marks omitted).   Indeed, "it takes no great imagination to see how evidence that a file was downloaded by a certain IP address could support a plausible claim that the file was downloaded by the subscriber at that IP address." *Patrick Collins, Inc. v. Osburn*, No. 12-1294, 2014 WL 1682010, at *4 (D. Md. Apr. 28, 2014) (Grimm, J.), *aff'd*, 595 Fed. Appx. 243 (4th Cir. 2015); *see also Glover*, 140 S. Ct. at 1186–91.

"At this stage, the court is not asked to pass judgment on the strength of the plaintiff's allegations against the defendant, but to determine whether the plaintiff should have the opportunity to name that defendant in the first place." *Strike 3*, 964 F.3d at 1210.   "That is precisely what Strike 3 seeks here: the discovery necessary to reveal the defendant's identity and to begin litigating its infringement claims." *Id*.   Nevertheless, *after* early discovery occurs, it is incumbent on a plaintiff in a BitTorrent copyright infringement matter to conduct a follow-up investigation of publicly available resources to determine whether it can allege "something more"—in its *amended* complaint—to further identify the defendant as the infringer, beyond merely being the subscriber (or someone with sufficient

access to the IP address during the period of infringement).[10]   *See Cobbler*, 901

F.3d at 1145; *Strike 3*, 2019 WL 4855039 at *2; *Strike 3*, 2019 WL 4745360 at *6;

*Malibu Media, LLC v. Doe*, No. 18-5792, 2019 WL 7876473, at *3 (N.D. Ill. Jan.

2, 2019).

In *Cobbler*, the Ninth Circuit recognized that early discovery is "part of the

puzzle" a plaintiff must solve to further identify the "true" infringer in BitTorrent

infringement cases.  901 F.3d at 1145.  However, *after* early discovery occurs, the

Ninth Circuit held that the plaintiff's claim against the subscriber "standing alone"

—as alleged in the amended complaint in that suit—was implausible because

plaintiff's "counsel learned that the internet service was accessible to both

residents and visitors at an adult care home, [and counsel expressly] concluded that

---

[10] VXN has recorded numerous instances of this IP address sharing not only
Plaintiff's works, but the mainstream works of others (*e.g.*, movies, television
shows, music, software, and books).  Once Plaintiff obtains Doe's identity, its
investigators can review publicly available data to determine whether a good faith
basis exists to further identify Doe, or someone else with sufficient access to the IP
address, as the infringer.  *See Malibu Media v. Rahuse*, No. 14-6976, 2015 WL
2231853, at *4 (D.N.J. May 11, 2015) (Linares, J.) (denying motion to dismiss
*amended* complaint based on allegations of social media evidence connecting
subscriber as infringer).  However, it is not possible to work backwards, and use
this evidence to further identify the anonymous infringer without first receiving
Doe's identity.  *See, e.g.*, *Strike 3 Holdings, LLC v. Doe*, No. 18-5566, ECF No. 7,
33, 35 (D.N.J. Sept. 29, 2018) (amended complaint alleging, among other things,
that defendant is a dentist who owns a dental practice and used BitTorrent to
download the ADA manual on how to run a dental practice); *Strike 3 Holdings,
LLC v. Doe*, No. 18-06488, ECF No. 15, 37 (N.D. Ill. Dec. 20, 2018) (amended
complaint alleging, among other things, that defendant tweeted at Strike 3 to cast a
specific actress in upcoming movies).

'it does not appear that [the subscriber] is a regular occupant of the residence or the likely infringer.'" *Id.* "Although the district court granted leave to depose [the subscriber], the deposition revealed no new information regarding the identity of the actual infringer. Nevertheless, [the plaintiff] filed a First Amended Complaint and named [the subscriber] as the sole Doe." *Id.* That is, *after* early discovery occurred, the plaintiff essentially conceded that it did not know who the infringer was, but nevertheless proceeded with direct and indirect claims against the subscriber based solely on his status as the subscriber.

"Here, by contrast, Strike 3 has not even been able to gather such threshold facts about the alleged infringer." *Strike 3*, 964 F.3d at 1212. As numerous courts have explained, "*Cobbler Nevada* does not stand for the proposition that subpoenas may not be used to determine a subscriber's name." *Strike 3 Holdings, LLC v. Doe*, No. 19-723, 2019 WL 2996428, at *3 (N.D. Cal. July 9, 2019); *see also Strike 3*, 2019 WL 4745360 at *6 (denying motion to quash ISP subpoena because, among other reasons, "[e]ven in *Cobbler* itself, the Plaintiff was allowed to subpoena the ISP" and "*Cobbler* does not suggest that the sort of information sought here should not be discoverable."); *Strike 3 Holdings, LLC v. Doe*, No. 18-2637, 2019 WL 935390, *4 (E.D. Cal. Feb. 26, 2019) ("*Cobbler*[] did not disturb the Ninth Circuit's decision in *Glacier Films (USA), Inc. v. Turchin*, 896 F.3d 1033 (9th Cir. 2018)," wherein "the process endorsed by the Ninth Circuit included

'allow[ing] copyright holders to seek limited discovery from an Internet Service Provider to establish a potential infringer's identity[.]'").  In short, *Cobbler* provides no basis to deny expedited discovery in these matters, and "[t]he mere fact that discovery *may* demonstrate that the subscriber is not the proper defendant is no basis to close the courthouse doors before Strike 3 can step inside."[11]  *Strike 3*, 964 F.3d at 1209.

Plaintiff has "unmistakably allege[d] that Defendant[] infringed upon Plaintiff's copyrighted material by downloading copies of protected works. Therefore, Plaintiff states a *prima facie* case for copyright infringement."  *Strike 3*, 2020 WL 3567282 at *5–6.  "Because Plaintiff has sufficiently stated a viable claim of copyright infringement against the identified IP address[] and its placeholder-defendant subscriber[], Plaintiff should be provided with discovery to further assist it in identifying the underlying wrongdoer."  *Id.* at *7.

---

[11] The decisions of *Malibu Media, LLC v. Peled*, No. 18-141, 2020 WL 831072 (D.N.J. Feb. 20, 2020) and *Malibu Media, LLC v. Park*, No. 17-12107, 2019 WL 2960146 (D.N.J. July 9, 2019), are not to the contrary.  In both matters, default judgment was denied because the plaintiff's *amended* complaints, served *after* early discovery was permitted, failed to allege any additional information to further identify the defendant beyond merely being the subscriber, as required by *Cobbler*. *See* No. 18-141, ECF No. 12; No. 17-12107, ECF No. 8.  In contrast, the question here is not whether to grant *judgment* in favor of Plaintiff, but whether to permit *early discovery* so that Plaintiff can file an amended complaint that contains the information lacking in *Peled* and *Park*.  *See Malibu Media, LLC v. Doe*, No. 19-2347, 2019 WL 4305486, *2 n.2 (D.D.C. Sept. 11, 2019) (distinguishing *Park* and granting early discovery).

### 2. The Timing of the Request in Light of the Formal Start to Discovery Favors Granting Relief.

The Third Circuit has instructed that, "[i]f discovery is sought by a plaintiff, as it was here, and if it would aid in the identification of responsible defendants or the lack thereof, district courts should strongly consider granting it." *Alston*, 363 F.3d at 233 n.6. Thus, this factor "weighs in favor of permitting expedited discovery of the limited type Plaintiff seeks[.]" *Strike 3*, 2020 WL 3567282 at *8; *see also Strike 3*, 964 F.3d at 1207.

### 3. Plaintiff's Request is Narrowly Tailored and Identifies the Limited and Specific Information Sought.

Plaintiff's request is also narrowly tailored and sufficiently specific. The "specificity" required by this factor refers to "[the] specificity of the *discovery request*." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 119 (2d Cir. 2010) (emphasis added). To satisfy this element a plaintiff must seek "concrete and narrow information: the name and address of the subscriber associated" with the IP address being used to commit the alleged infringement. *John Wiley & Sons, Inc. v. Doe Nos. 1-30,* 284 F.R.D. 185, 190 (S.D.N.Y. 2012). Indeed, "[c]ourts have labeled the subscriber's identity and address as 'highly specific'" in these cases. *Malibu Media*, 2018 WL 2386068 at *3 (citation omitted)*.

"Plaintiff seeks only the name and permanent address of the IP address subscriber[]. Such identifying information is narrowly tailored, requesting no

more than would be required to identify the relevant individual." *Strike 3*, 2020 WL 3567282 at *8.  And reasonable minds simply cannot disagree that Plaintiff has set forth its proposed discovery—a subpoena for the identity of a specific individual, assigned a specific IP address, on a specific date and time (recorded down to the minute and second)—with sufficient specificity.  "The subpoena is specific enough to give rise to a reasonable likelihood that information facilitating service upon proper defendants will be disclosed if the ISPs comply." *Raw Films, Ltd. v. John Does 1-15*, No. 11-7248, 2012 WL 1019067, at *7 (E.D. Pa. Mar. 26, 2012) (denying motion to quash subpoena).  "[A]lthough the provision of this information may not directly identify the proper defendants, it is sufficiently tailored to lead to the identification of those individuals." *Id.*

> ### 4.   The Purpose of the Requested Discovery and the Need for the Information Sought in Order to Advance the Claim Favors Granting Relief.

"[T]he purpose of the requested discovery[] is clear and narrow: to identify the subscriber[] of [the] IP address[] connected with various copyright infringement activities." *Strike 3*, 2020 WL 3567282 at *8.  "Binding Circuit-level precedent advises courts to grant limited discovery in circumstances where a plaintiff may not otherwise have access to means for identifying John Doe defendants." *Id.* (citing *Alston*, 363 F.3d at 233 n.6).

Similarly, the need for this information cannot be understated.  As previously emphasized, Plaintiff cannot properly serve Doe—or even confirm whether Doe or someone else is the appropriate defendant and, thereby, file an amended complaint that complies with the standard set forth in *Cobbler*—without first obtaining the subscriber's identity from his or her ISP.  Since there is no public registry of which IP addresses correspond to which subscribers they are assigned, Plaintiff's subpoena is necessary to advance this litigation.

"[T]he identity of the defendant is critical to the ability of the plaintiff to serve process on defendant and proceed with the litigation." *Malibu Media, LLC v. John Does 1-15*, No. 12-2077, 2012 WL 3089383, *8 (E.D. Pa. July 30, 2012); *Sony Music Entm't Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 566 (S.D.N.Y. 2004). And, "[o]nce in possession of Defendant's name and address, Plaintiff can investigate and confirm it has a good faith basis for believing it has found the infringing party." *Strike 3*, 2019 WL 4855039 at *2.  Thus, without receiving Doe's identity—to complete its investigation and, if appropriate, to amend its complaint and serve process—Plaintiff cannot proceed with its lawsuit to protect its copyrights.  "[T]he protections provided to these copyright holders by the Copyright Act would evaporate, unless copyright holders are permitted to engage in this discovery." *W. Coast Prods., Inc. v. Does 1-1,434*, No. 11-55, 2012 WL 10132002, at *4 (D.D.C. Aug. 6, 2012); *see also Strike 3*, 2019 WL 4745360 at *6

("Plaintiff must be able to enforce its rights[.]").  "Unless the rules are construed to allow some reasonable method to determine against whom that claim should be asserted, Plaintiff will have presumably suffered a federal statutory wrong with no remedy.  That is not just."  *Strike 3*, 2020 WL 3567282 at *11.

### 5.    The Discovery Does Not Burden Doe or Require Doe to Respond in an Expedited Manner.

These factors do not preclude authorizing this discovery because, "[i]n the most literal sense, the discovery sought imposes no burden at all on Defendant[], as it [is sought] from and will be produced by a third-party, the ISP."  *Strike 3*, 2020 WL 3567282 at *8.  Indeed, courts within the District routinely deny motions to quash court-authorized ISP subpoenas by doe defendants on the grounds of "undue burden," since they impose no burden on the doe defendants.  *See, e.g.*, *Malibu Media, LLC v. Doe*, No. 12-07789, 2014 WL 229295, at *1 (D.N.J. Jan. 21, 2014) ("Because the subpoena is directed to a third party, [Doe] cannot establish that it imposes an undue burden upon him.").

### 6.    There Are No "Alternative Means" to Uncover Doe's True Identity.

At this early stage in litigation, Plaintiff has a limited view into Doe's true identity, since it only knows the offending IP address and the works they downloaded and distributed, but cannot pierce Doe's technological mask without court assistance.  *See supra* Sec. III.B.1, p. 18, n. 10.  "BitTorrent software is

24

'largely anonymous' except insofar as it requires a user to broadcast the user's IP address," *John Wiley & Sons, Inc.*, 284 F.R.D. at 190, and, therefore, "Plaintiff can identify Defendant only through his IP address[.]"  *Strike 3 Holdings, LLC v. Doe*, No. 18-2648, 2019 WL 78987, *1 (S.D.N.Y. Jan. 2, 2019); *see also BMG Rights Mgmt.*, 881 F.3d at 299 ("[O]nly the ISP can match the IP address to the subscriber's identity[.]").  Indeed,

> BitTorrent's appeal to users is the large degree of anonymity it provides.  Absent a Court-ordered subpoena, many of the ISPs, who qualify as 'cable operators' for purposes of 47 U.S.C. § 522(5), are effectively prohibited by 47 U.S.C. § 551(c) from disclosing the identities of [the defendants] to Plaintiff.  Thus, without granting Plaintiff's request [for early discovery], [Defendant] cannot be identified or served and the litigation cannot proceed.

*Strike 3 Holdings, LLC v. Doe*, No. 18-569, 2018 WL 4109394, at *2 (W.D.N.Y. Aug. 28, 2018) (citations and internal quotation marks omitted); *see also Call of the Wild Movie, LLC v. Does 1-1,062*, 770 F. Supp. 2d 332, 352–53 (D.D.C. 2011).

As noted above, in a number of matters Plaintiff has sought to lessen the burden these suits impose on the federal judiciary by obtaining court authorization to serve an ISP subpoena using a Florida cause of action.  *See supra* Sec. II.D. However, whenever a subscriber or ISP objects to such a subpoena (formally or informally) on the grounds that the subpoena should be issued by the federal court of his or her domicile, Plaintiff has a standing policy to withdraw the subpoena and seek new authorization in accordance with that objection.  *Id.*  Nevertheless,

regardless of whether the subpoena is authorized by a court in Florida, or this Court, the fact remains:  a court-authorized subpoena to the ISP is the only method available for Plaintiff to learn a subscriber's identity.[12]  *See* 47 U.S.C. § 551(c).  As discussed above, Plaintiff did not first request authorization for this subpoena from a state court in Florida because Doe's ISP has a policy of not complying with any subpoena that has not been authorized by a federal court.

In short, there are no "other means by which Plaintiff could gather the information it seeks, and the narrow nature of its request[] appear[s] to provide the only reasonable way to obtain it.  Such further militates in favor of granting the relief sought."  *Strike 3*, 2020 WL 3567282 at *9 (citation omitted).  A court order authorizing Plaintiff to serve a subpoena on the ISP is the only means available for Plaintiff to learn the subscriber's identity.  *See* 47 U.S.C. § 551.

---

[12] Although several defendants have attempted to quash subpoenas issued by federal courts after Strike 3 voluntarily agreed to pursue expedited discovery in the forum of their choice, none have been successful.  *See, e.g.*, *Strike 3 Holdings, LLC v. Doe*, No. 20-67, 2020 WL 3640008, *3-6 (S.D. Cal. July 6, 2020); *Strike 3 Holdings, LLC v. Doe*, No. 19-2452, 2020 WL 2467067, *4 (S.D. Cal. May 13, 2020); *Strike 3 Holdings, LLC v. Doe*, No. 19-08239, 2020 WL 1865379, at *4 (N.D. Cal. Apr. 13, 2020); *Strike 3 Holdings, LLC v. Doe*, No. 19-08231, 2020 WL 1942471, at *2 (N.D. Cal. Apr. 22, 2020); *Strike 3 Holdings, LLC v. Doe*, No. 19-10674, 2020 WL 2574940 (C.D. Cal. Apr. 28, 2020), *report and rec. adopted*, 2020 WL 2572456 (C.D. Cal. May 21, 2020); *Strike 3 Holdings, LLC v. Doe*, No. 19-10677, 2020 WL 2616243 (C.D. Cal. Apr. 23, 2020), *report and rec. adopted*, 2020 WL 2615450 (C.D. Cal. May 22, 2020).

### 7.    Doe's Minimal Privacy Interest Is Substantially Outweighed by Plaintiff's Interest in Protecting Its Copyrights.

Finally, Doe's privacy interest is minimal and outweighed by Plaintiff's interest in protecting its copyrights. Although the CCPA recognizes that subscribers have a privacy interest in not having their identities publicly disclosed, the Act expressly recognizes it is a qualified interest, and specifically provides that courts can order that identifying information be disclosed. *See* 47 U.S.C. § 551(c). Importantly, this privacy interest does not foreclose the requested discovery, it merely requires that a Court determine whether it is appropriate to allow the subpoena to the ISP, which may be done subject to an appropriate "limited protective order" that "balances the Plaintiff's right to pursue its claims and the concomitant right of access to court proceedings enjoyed by the public with . . . legitimate privacy interests" of Doe. *Strike 3*, 2020 WL 3567282 at \*11; *Strike 3 Holdings, LLC v. Doe*, 330 F.R.D. 552, 555 (D. Minn. 2019) (reversing decision that privacy concerns required denial of request to serve subpoena prior to a Rule 26(f) conference); *see also CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 996 (7th Cir. 2002) ("There is no privilege or restriction on releasing customer records to a nongovernmental entity pursuant to a court order") (citing 47 U.S.C. § 551(c)(2)(B)).

As other courts in this District have correctly recognized when denying motions to quash similar court-authorized ISP subpoenas, Plaintiff's right to

27

protect its copyrights outweighs a subscriber's "diminished" right to privacy, *Strike 3 Holdings, LLC v. Doe*, No. 18-14138, ECF No. 15 at \*2 (D.N.J. June 27, 2019), and permitting Doe to proceed anonymously further mitigates this concern. *Strike 3 Holdings, LLC v. Doe*, No. 18-12609, ECF No. 16 at \*5 (D.N.J. June 27, 2019); *see also Strike 3*, 2019 WL 78987 at \*4 (denying motion to quash and noting that the "protective order has fairly balanced Plaintiff['s] and Doe's interests").

Indeed, while "[s]ome courts have gone so far as to find that internet users have constitutional privacy interests in their internet browsing and file-sharing . . . these privacy interests must not be used as a shield behind which internet users can commit unabated, legally actionable behavior." *Strike 3*, 2020 WL 3567282 at \*10 (citations omitted). "In general, privacy rights do not grant users a license to infringe on copyrighted material. Thus, to the extent that anonymity is used to mask copyright infringement or to facilitate such infringement by subscribers or other persons, it is unprotected by the First Amendment." *Id.* (citation omitted); *see also U.S. v. Christie*, 624 F.3d 558, 574 (3d Cir. 2010) (holding that subscribers do not have a privacy interest in their IP address).

### C.    The Court Should Enter an Appropriate Protective Order to Balance the Interests of the Public's Right to Access Court Proceedings and Doe's Privacy Interests.

It is well-established that "while there may be some social stigma attached to consuming pornography . . . it is [nonetheless] the rare civil lawsuit in which a

defendant is not accused of behavior of which others may disapprove." *Strike 3*, 2019 WL 4745360 at *6 (citation and internal quotation marks omitted). Although at this juncture it is "truly speculative" whether there "may be privacy issues and even First Amendment defenses available" to Doe, Plaintiff's "right to take reasonable and measured steps to identify the real infringers should not be impeded by the possibility that other privacy interests may be implicated, particularly where . . . those concerns can be accounted for through use of protective orders." *Strike 3*, 2020 WL 3567282 at *11.

Plaintiff respectfully submits that entry of such a protective order (1) permitting Doe to appear pseudonymously, and (2) requiring Plaintiff to file documents containing Doe's identifying information under temporary seal, pursuant to Local Civil Rule 5.3(c), is appropriate here.

First, although Fed. R. Civ. P. 10(a) requires, in relevant part, that the caption of a complaint "name all of the parties," the Third Circuit has recognized that "in exceptional cases courts have allowed a party to proceed anonymously." *Doe v. Megless*, 654 F.3d 404, 408 (3d Cir. 2011). And while "embarrassment" alone is "not enough," the Third Circuit specifically has recognized that examples of such "exceptional cases" often involve questions touching on sexuality, such as "abortion, birth control, transexuality, mental illness, welfare rights of illegitimate children, AIDS, and homosexuality." *Id.* (quoting *Doe v. Borough of*

*Morrisville*, 130 F.R.D. 612, 614 (E.D. Pa. 1990)); *see generally Bostock v. Clayton Cty., Georgia*, __ U.S. __, 140 S. Ct. 1731 (2020).

Although it would be improper to take the adult nature of Plaintiff's works into account when determining whether they are afforded protection under the Copyright Act, and, thus, whether early discovery should be permitted here, *Strike 3*, 964 F.3d at 1210 (holding that "the content of a copyrighted work is *per se* irrelevant to a Rule 26(d)(1) motion seeking discovery to identify an anonymous infringer"), this Court can and should take this content into account when determining how to protect Doe's privacy interests.  *Next Phase Distribution, Inc. v. Does 1-138*, No. 11-9706, 2012 WL 691830, at *1 (S.D.N.Y. Mar. 1, 2012) (permitting defendant to remain pseudonymous because "[a]n allegation that an individual illegally downloaded adult entertainment likely goes to matters of a sensitive and highly personal nature, including one's sexuality.") (quoting *Digital Sin, Inc. v. Does 1–5698,* No. 11-04397, 2011 WL 5362068, at *4 (N.D. Cal. Nov. 4, 2011)).  And many of the non-exclusive factors endorsed by the Third Circuit weigh in favor of permitting Doe to remain pseudonymous here:  Doe's identity is unknown and, therefore, been kept confidential thus far; there is no illegitimate motive to keep Doe's identity from public disclosure; and there is little to no public interest in knowing Doe's identity in this matter.  *See Malibu Media, LLC v. Doe*, No. 15-2624, 2015 WL 6116620, at *5 (S.D.N.Y. Oct. 16, 2015) ("While the

public interest is generally furthered by allowing public scrutiny of judicial proceedings, here there is minimal public interest in disclosing Defendant's name when weighed against Defendant's interests in remaining anonymous.") (citing *Next Phase Distribution,* 2012 WL 691830, at *2).

Second, although there is a presumptive right of public access to judicial proceedings and records, that right is not absolute.  *In re Cendant Corp.*, 260 F.3d 183, 194 (3d Cir. 2001).  Although Plaintiff would ordinarily file documents containing Doe's identifying information under temporary seal as a matter of course (just as it would refrain from initiating settlement negotiations with an unrepresented party, even absent a court order), Plaintiff submits that the provisions of its proposed order—formally requiring Plaintiff to file relevant documents under temporary seal and outlining the process for rebutting the presumption of public access to permanently seal these documents once Doe is identified and served with process—is appropriate to further ensure that Doe's minimal privacy interest is protected.

In sum, Plaintiff respectfully submits that entry of such a protective order is appropriate in this matter, *see* Fed. R. Civ. P. 26(c), and that Plaintiff's proposed order contains provisions that adequately "balance on the one hand the public's right of access to court proceedings and on the other hand legitimate privacy

interests" of Doe.  *Strike 3*, 2020 WL 3567282 at *12; *see also Strike 3*, 2019 WL 4745360, at *7.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court grant leave for Plaintiff to issue a Rule 45 subpoena to Doe's ISP, subject to the proposed protective order.

DATED: 08/25/2020                     Respectfully submitted,

**THE ATKIN FIRM, LLC**

*Attorneys for Plaintiff,*
*Strike 3 Holdings, LLC*

By:     */s/ John C. Atkin, Esq.*
         JOHN C. ATKIN